UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**JOHN CURKOVIC,**

      **Plaintiff,**

**v.**                                           **Case No:  6:16-cv-1784-Orl-41GJK**

**BROOKS TURTON and BOTTLING
GROUP, LLC,**

      **Defendants.**
_____/

**ORDER**

THIS CAUSE is before the Court on Bottling Group, LLC's Motion for Summary Judgment (Doc. 43). Plaintiff filed a Response (Doc. 49), to which Defendant filed a Reply (Doc. 52). For the reasons stated below, Bottling Group LLC's Motion for Summary Judgment will be granted.

**I.     BACKGROUND**

This case arises from Plaintiff's employment as a Product Availability Supervisor for Bottling Group, LLC ("Bottling Group"). (Pl.'s Dec. 27, 2017 Dep., Doc. 44-2, at 54:20–21). According to Plaintiff, he was subjected to repeated sexual harassment, culminating in a hostile work environment. In addition, Plaintiff avers that after complaining about being sexually harassed, Bottling Group retaliated against him.

**A.     Hostile Work Environment**

Plaintiff was hired by Bottling Group on May 19, 2014. (Baird Aff., Doc. 44-15, at ¶ 2). Prior to his employment with Bottling Group, Plaintiff worked for its sister company, Frito-Lay,

Inc., for approximately fourteen years. (Doc. 44-2 at 69:9–10).[1] On or about June 15, 2015, Brooks Turton, a Product Availability Manager,[2] (*Id.* at 54:22–23), shook Plaintiff's hand while tickling Plaintiff's palm with his middle finger, (*id.* at 50:19–22, 51:21–25). In response, Plaintiff jerked his hand away from Turton, who allegedly winked and said "hey John" as he left Plaintiff's work area. (*Id.* at 52:3–6). After returning home from work, Plaintiff performed an internet search of the handshake's meaning, and based on the results, Plaintiff became convinced that the handshake was a sexual proposition. (*Id.* at 98:24–99:8). There were no witnesses to the handshake, (*id.* at 60:9–14), and Plaintiff did not initially report the incident to anyone at Bottling Group, (*see id.* at 81:10–19).

Approximately one week later, Turton allegedly said "hey, good looking" to Plaintiff while asking about a work-related matter. (*Id.* at 81:20–82:3, 83:11–84:3, 92:9–11). Plaintiff did not say anything in response to Turton's comment, but he believed that the comment was a sexual proposition. (*Id.* at 84:11–19). No one overheard the exchange, and Plaintiff did not initially report it to Bottling Group. (*Id.* at 84:4–7, 86:2–11).

On or about July 12, 2015, Turton again shook Plaintiff's hand while tickling Plaintiff's palm with his middle finger. (*Id.* at 94:17–24, 95:15–18). Plaintiff did not say anything to Turton about the handshake, (*see id.* at 98:13–23), nor were there any witnesses to the incident, (*id.* at 116:8–10). On or about July 30, 2015, Plaintiff reported the three alleged acts of sexual harassment to Human Resources Specialists Traci Rue and Katie Baird and Plant Manager David Critchfield.

---

[1] Although Bottling Group is a separate entity from Frito-Lay, Inc., the two companies are related, and when Plaintiff was hired at Bottling Group, he was considered a rehire. (*See* Doc. 44-2 at 69:11–13; Doc. 44-15 ¶ 2).

[2] Although Product Availability Supervisors report to Product Availability Managers, Turton was not Plaintiff's direct report as he was employed in a different department. (*See* Doc. 44-2 at 55:9–56:3).

(Pl.'s Apr. 6, 2017 Dep., Doc. 44-1, at 20:6–21:2; Doc. 44-2 at 101:23–102:1, 102:5–103:1). After the meeting, Baird and Richard Losego, Plaintiff's second-level supervisor, spoke with Turton regarding Plaintiff's complaint. (Doc. 44-15 at ¶ 3). Turton admitted to the handshakes but denied that there was an ulterior motive behind them; instead, he claimed that it was something him and his father did jokingly. (*Id.*). Turton denied all other alleged misconduct. (*See id.*). Regardless, Baird and Losego directed Turton to refrain from using the handshake at work, and Turton agreed. (*Id.*). Baird and Rue informed Plaintiff that Turton was told to cease using the handshake. (*Id.*; *see also* Doc. 44-2 at 109:18–21).

The last incident of alleged sexual harassment occurred on or about August 12, 2015. (Doc. 44-2, at 116:14–21). Plaintiff asserts that Turton came up behind him, rubbed his left shoulder for approximately three seconds, and whispered "hey John." (*Id.* at 117:22–25, 118:9–12). Plaintiff greeted Turton but did not attempt to move his hand or tell him to stop. (*Id.* at 118:15–119:14, 121:17–20). This encounter was witnessed by a fellow employee, John Reed. (*Id.* at 119:18–25).

That same day, Plaintiff reported the alleged incident to Rue on the phone and followed up via e-mail. (*See id.* at 120:13–16, 121:7–12; *see also* Doc. 44-15 ¶ 4; Aug. 13, 2015 E-mail, Doc. 44-7, at 1). Plaintiff also contacted Bottling Group's corporate Human Resources Department, which informed Plaintiff that the local human resources team would investigate the matter. (Doc. 44-2 at 125:8–12, 127:12–15). Bottling Group investigated Plaintiff's allegations, which included interviews of Turton, Plaintiff, and Reed. (Doc. 44-15 ¶ 4; *see also* Doc. 44-2 at 128:17–129:4). During his interview, Reed described the contact as an awkward three-finger squeeze but did not describe it as sexual in nature. (Doc. 44-15 ¶ 4). Reed also stated that Plaintiff pulled away immediately after he was touched and walked away. (*Id.*) Afterwards, both Plaintiff and Turton went on with their day as usual. (*Id.*). When asked, Turton did not recall touching anyone

inappropriately. (*Id.* ¶ 5). Nevertheless, Turton was reminded not to engage in inappropriate physical contact with co-workers, and Turton assured Bottling Group that he would not do so in the future. (*Id.*). Bottling Group's investigation concluded on September 9, 2015, when it issued Turton a Last Chance Warning for violating the company's anti-harassment policy. (*Id.* ¶ 6; *see also* Last Chance Warning, Ex. A to Doc. 44-15, at 5–6). According to the warning, any future violations of the anti-harassment policy would result in immediate termination. (Ex. A to Doc. 44-15 at 5). Critchfield and Baird informed Plaintiff of the outcome of the investigation. (Doc. 44-15 ¶ 6; *see also* Doc. 44-2 at 129:22–25, 130:6–18).

After the investigation, Plaintiff continued to work with Turton, though they rarely interacted with each other. (Doc. 44-2 at 133:22–134:19). Bottling Group offered Plaintiff the option of transferring to the second shift production level, which included the potential for a pay raise. (*Id.* at 200:4–15). Plaintiff turned down the offer, (*id.* at 200:8–9), but was allowed to take time off, (*id.* at 134:24–135:7). Plaintiff did not experience any further harassment from Turton, (*id.* at 130:21–23), who resigned and ceased working for Bottling Group on November 13, 2015, (Doc. 44-15 ¶ 7).

### B.     Retaliation

In addition to his hostile work environment claim, Plaintiff also alleges he was retaliated against after making complaints of sexual harassment against Turton. In November 2015, Rick Walker replaced Marcus Williams as Plaintiff's first-level supervisor. (Doc. 44-15 at ¶ 8; Doc. 44-2 at 135:20–21). Approximately two months into Walker's tenure, Plaintiff informed Walker of Turton's alleged sexual harassment. (Doc. 44-1 at 30:2–14, 32:10–22; Doc. 44-2 at 166:1–20). On or about March 3, 2016, Plaintiff received a Performance and Development Review ("PDR") from Walker and Losego that Plaintiff alleges was worse than his most recent prior review. (*See*

*generally* 2015 PDR, Doc. 44-8; *see also* Doc. 44-2 at 138:9–139:1). The most recent prior review Plaintiff received was for the 2013 year while he was employed at Frito-Lay. (*Id.* at 158:17–20). Specifically, on his 2015 PDR with Bottling Group, Plaintiff received a score of 3 for short term results and a score of 2 for long term results, (Doc. 44-8 at 1; Doc. 44-2 at 157:18–21), and on his 2013 PDR with Frito Lay, he received a score of 3 and 3, (2013 PDR, Ex. B to Doc. 44-15, at 7).[3] Notwithstanding his 2015 PDR score, Plaintiff's salary increased from $54,300 to $55,100 and a bonus of $5,734.17—an amount higher than the targeted bonus. (Doc. 44-2 at 154:3–155:3).

Plaintiff alleges three additional acts of retaliation by Losego and Walker. First, Plaintiff claims that Losego sent him text messages questioning Plaintiff on matters outside of his job responsibilities, which Plaintiff construed as Losego assigning him more work. (*Id.* at 139:19–140:12, 141:4–10). Second, Plaintiff received a coaching with a note to file from Walker on May 10, 2016, (Apr. 16, 2016 Note to File, Doc. 44-10, at 1; *see also* Doc. 44-15 ¶ 10; Doc. 44-2 at 173:16–18), in response to a coaching that Plaintiff gave to another co-worker, Shawn Shope, (Doc. 44-10 at 2; Doc. 44-2 at 173:11–15). The coaching memo Plaintiff gave to Shope contained the confidential information of a separate co-worker, Dawin Alvarado, which Plaintiff attempted to cross out but was still visible. (*See* Doc. 44-10 at 2; *see also* Doc. 44-2 at 170:5–17, 171:5–8). Third, Plaintiff received e-mails from Walker, which Plaintiff claims were intentionally targeted at him and unfairly critical of his job performance. (*See* May 3, 2016 E-mail, Doc. 44-12, at 1–2; July 12, 2016 E-mail, Doc. 44-13, at 1–2; *see also* Doc. 44-2 at 145:8–10, 146:7–13, 188:22–24, 189:22–24). Plaintiff asserts that Walker singled him out in a May 3, 2016 e-mail regarding the untimely unloading of chilled product requiring refrigeration and Plaintiff not checking his e-mail

---

[3] Plaintiff did not receive a PDR for 2014 due to his limited time in the position for that year. (Doc. 44-15 ¶ 9).

nightly. (Doc. 44-12 at 1–2; *see also* Doc. 44-2 at 187:5–12, 187:18–25). Additionally, in a July 12, 2016 e-mail exchange, Plaintiff avers that Walker blamed him for the poor condition of the warehouse and for failing to send trucks to shuttle product from the production line to an off-site facility. (Doc. 44-13 at 1–2; *see also* Doc. 44-2 at 188:25–189:8, 190:25–191:16).

Plaintiff is still employed at Bottling Group. (Doc. 44-2 at 207:11–13; Doc. 44-15 ¶ 2). Plaintiff went out on medical leave in April 2017, (Doc. 44-2 at 207:14–16; Doc. 44-15 ¶ 2), and his job protection expired on October 5, 2017, (Doc. 44-15 ¶ 2). However, Plaintiff remains eligible to apply for open positions as an internal candidate until the exhaustion of his approved leave of absence. (*Id.*).

On June 1, 2016, Plaintiff initiated this suit in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida. (*See generally* Doc. 2). On October 14, 2016, Defendants removed the case to this Court. (*See generally* Notice of Removal, Doc. 1). In his Complaint, Plaintiff asserts claims for hostile work environment and retaliation in violation of the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.01–760.11, (Counts I & II), and state law battery against Turton, (Count III). Bottling Group now moves for summary judgment on Counts I & II and moves to dismiss Count III for failure to serve Turton.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.* "The moving party bears the initial burden of showing the court, by reference to materials on file,

that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

### III.   SUMMARY JUDGMENT ANALYSIS

#### A.   Hostile Work Environment

Plaintiff alleges that he was subjected to a hostile work environment, in the form of sexual harassment, in violation of the FCRA. The FCRA forbids an employer from "discriminat[ing] against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status." Fla. Stat. § 760.10(1)(a). "Sexual harassment is a form of sexual discrimination within the meaning of [the FCRA]."[4] *Fleming v. Boeing Co.*, 120 F.3d 242, 244

---

[4] "The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII." *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (collecting cases).

(11th Cir. 1997); *Scelta v. Delicatessen Support Servs.*, 57 F. Supp. 2d 1327, 1339 (M.D. Fla. 1999). "Two types of sexual harassment are prohibited by [the FCRA]: *quid pro quo* harassment and hostile work environment harassment." *Fleming*, 120 F.3d at 244. Plaintiff's claims are limited to allegations of hostile work environment based on sexual harassment.

To establish a claim of hostile work environment based on sexual harassment, an employee must show: (1) "that the employee belongs to a protected group"; (2) "was subject to unwelcome sexual harassment"; (3) "based upon the employee's sex"; (4) that "was sufficiently severe or pervasive to alter a term, condition, or privilege of employment and create an abusive working environment"; and (5) there exists "a basis for holding the employer liable." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1258 (11th Cir. 1999) (quotation omitted). For summary judgment purposes, Bottling Group does not dispute that Plaintiff belongs to a protected group, was subjected to unwelcome sexual harassment, or that the harassment Plaintiff experienced was based on his sex. However, Bottling Group contends that Plaintiff cannot establish the remaining elements. The Court agrees that Plaintiff has failed to establish that he suffered an adverse employment action, and consequently, need not address the last element.

"Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component." *Id.* at 1246 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)). "The employee must 'subjectively perceive' the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Id.* (quoting *Harris*, 510 U.S. at 21–22). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

The Eleventh Circuit has identified four factors that courts should consider in determining whether the alleged harassment altered an employee's terms or conditions of employment: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.*

Plaintiff's hostile work environment claim consists of four incidents of alleged sexual harassment that occurred over a two-month period: (1) a handshake with a palm tickle and a wink; (2) Turton saying to Plaintiff, "Hey, good looking"; (3) a second handshake with a palm tickle; and (4) an approximately three second shoulder rub. Analyzing Turton's actions as a whole, this case does not present the frequency of conduct necessary to demonstrate that an employee's terms or conditions of employment have been altered. *C.f. Olsen v. Lowe's Home Ctrs. Inc.*, 130 F. App'x 380, 388 (11th Cir. 2005) (finding conduct sufficiently frequent where a manager subjected a female employee to offensive sexual comments several times a week, rubbed his body on hers twice, and kissed her once over the course of a two-and-a-half-month period); *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000) (fifteen instances of harassment over a four-month period); *Dees v. Johnson Controls World Servs., Inc.* 168 F.3d 417, 422 n.12 (11th Cir. 1999) (employee subjected to harassment on a nearly daily basis). To the contrary, courts in similar instances have found such infrequency of alleged harassment to be fatal to an employee's hostile work environment claim. *See, e.g.*, *Mahgoub v. Miami Dade Cmty. Coll.*, No. 04-20039-CV-UUB, 2006 WL 952278, at *1 (11th Cir. Apr. 13, 2006) (holding that four instances of offensive remarks, one accompanied by a threatening gesture, over an unspecified time period was not sufficiently severe or pervasive to alter the conditions of employment); *Buckhanon v. Huff & Assocs. Constr. Co.*, 506 F. Supp. 2d 958, 966 (M.D. Ala. 2007) ("Three

instances of derogatory language in a two month period does not rise to the level of frequency found actionable in Eleventh Circuit precedent.").

Moreover, the remaining factors do not establish that Plaintiff suffered an adverse employment action. "The Eleventh Circuit has generally found behavior to be severe when sexual advances are coupled with humiliating or threatening behavior." *Garriga v. Novo Nordisk, Inc.*, No. 8:08-cv-00708-T-17MAP, 2009 WL 2169830, at *6 (M.D. Fla. July 20, 2009), *aff'd*, 390 F. App'x 952 (11th Cir. 2010) (collecting cases). Conversely, behavior has not been found to be severe "when non-offensive words or light touching was the only action taken by the defendant." *Id.* (citing *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 585–86 (11th Cir. 2000) *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). The conduct in *Gupta* involved occasional sexual advances toward a female employee, one instance of touching her knee, and another instance of lifting the hem of her dress. 212 F.3d at 584–86. There, the court held that the alleged conduct was not sufficiently severe, reasoning that it was neither physically threatening nor humiliating as each incident of touching was brief and divorced from any verbal suggestions or advances. *Id.* at 585. Similarly, Turton's lone verbal advance was unaccompanied by any physical touching and any other instance of touching was only momentary. With regard to the remaining two factors, Plaintiff has failed to put forth any evidence or argument that the alleged sexual harassment was physically threatening or humiliating or that it interfered with his work. As a result, Plaintiff has failed to establish as a matter of law that the alleged sexual harassment was severe or pervasive, and Bottling Group is entitled to summary judgment on Plaintiff's hostile work environment claim.

### B. Retaliation

Before turning to Plaintiff's claim of retaliation, Bottling Group's Motion for Summary Judgment and Plaintiff's Response both address a claim of retaliatory harassment not pleaded in Plaintiff's Complaint. Eleventh Circuit precedent is clear: "At the summary judgment stage, the proper procedure for plaintiff[] to assert a new claim is to amend the complaint in accordance with [Federal Rule of Civil Procedure] 15(a). A plaintiff may not amend h[is] complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Because the issue is not properly before the Court, it will be disregarded in the Court's consideration of Bottling Group's Motion for Summary Judgment.

Plaintiff alleges that he was retaliated against after he complained of being sexually harassed, in violation of the FCRA. "[T]he FCRA prohibit[s] retaliation against an employee for opposing a discriminatory employment practice or for participating in an investigation or proceeding concerning employment discrimination." *Burrows v. Coll. of Cent. Fla.*, No. 5:14-cv-197-Oc-30PRL, 2015 WL 4250427, at *10 (M.D. Fla. July 13, 2015) (citing Fla. Stat. § 760.10(7)). Where there is no direct evidence of retaliation, as is the case here, the *McDonnell Douglas* burden-shifting framework applies. *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1202 (11th Cir. 2013); *see also generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiff must first establish a prima facie case of retaliation, which requires a showing that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) the adverse employment action was causally related to the protected activity. *Kidd*, 731 F.3d at 1211. If the plaintiff establishes a prima facie case, the defendant has the opportunity to rebut the presumption of discrimination previously established by the plaintiff. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–56 (1981). That is, "the burden then shifts to [the d]efendant to articulate some legitimate, nondiscriminatory reason for the employment action." *Burrows*, 2015 WL 4250427, at

\*5. Then, the plaintiff must "show that [the d]efendant's proffered legitimate, nondiscriminatory reason is pretextual." *Id.*

Plaintiff asserts that he engaged in two statutorily protected activities: his July 30, 2015 complaint to Baird, Rue, and Critchfield and his August 12, 2015 complaint to Rue and Bottling Group's corporate Human Resources Department. Bottling Group does not appear to contest that these activities are statutorily protected. Therefore, the Court will assume that the first prong has been met and address whether Plaintiff has suffered an adverse employment action.

"In order to constitute an adverse employment action for purposes of establishing a *prima facie* case under [the FCRA's] anti-retaliation provision, the action must be materially adverse from the standpoint of a reasonable employee, such that it would dissuade a reasonable employee from making a discrimination charge." *Williams v. Apalachee Ctr., Inc.*, 315 F. App'x 798, 799 (11th Cir. 2009) (citing *Burlington*, 548 U.S. at 57). "[T]he significance of any given act of retaliation will often depend upon the particular circumstances." *Burlington*, 548 U.S. at 69. However, "[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* at 67. Therefore, the alleged adverse action "must be material" as opposed to "those petty slights or minor annoyances that often take place at work." *Smith v. Quintiles Transnational Corp.*, 509 F. Supp. 2d 1193, 1203 (11th Cir. 2007) (quoting *Burlington*, 548 U.S. at 68).

The first purported retaliatory adverse employment action was Plaintiff's 2015 performance review from Walker and Losego. Plaintiff received negative comments and a total score of five on his review—one point lower than his prior performance review, which he received while employed at Frito-Lay for the 2013 year. Other than this comparison of scores, Plaintiff does not provide any evidence that the score he received from Walker and Losego was objectively

negative. Plaintiff admits that he would have been reviewed differently at Frito-Lay because he was employed in a different position, at a different company, and was under a different supervisor using different criteria for the review. (*See* Doc. 44-2 at 159:2–6, 162:6–10, 163:9–15). Therefore, little, if any, information can be gleaned from the comparison of these two scores.

Although Plaintiff did receive a slightly lower score in this review than in his previous review, no disciplinary action was taken, nor was Plaintiff denied eligibility for a pay raise based on his most recent review. *See Harris v. Fla. Agency for Health Care Admin.*, 611 F. App'x 949, 952 (11th Cir. 2015) (noting that "[a]n employee suffers a materially adverse action when he receives an unfavorable performance review that affects his eligibility for a pay raise" but not when there is no evidence that any disciplinary action was taken against the employee). In fact, Plaintiff received both a pay raise and a bonus exceeding the target amount after the review. Therefore, Plaintiff's score on his 2015 review, without more, does not constitute an adverse employment action.

Plaintiff also argues that the review negatively impacted his ability to obtain a promotion. However, Plaintiff never applied for a promotion while employed at Bottling Group. (*See* Doc. 44-2 at 158:1–9). "While the standards for what constitutes an adverse employment action are different between . . . discrimination and retaliation claims . . . the requirement of first applying for the promotion [is] equally applicable in the context of retaliation claims." *Moore v. Shands Jacksonville Med. Ctr., Inc.*, No. 3:09-cv-298-J-34TEM, 2013 WL 11327134, at *23 n.42 (M.D. Fla. Oct. 18, 2013), *aff'd sub nom. Moore v. Shands Healthcare, Inc.*, 617 F. App'x 924 (11th Cir. 2015). Thus, "[Plaintiff]'s non-promotion to a position for which he never applied is insufficient to establish a retaliation claim." *Id.* at *23.

Next, Plaintiff asserts that he was issued a coaching with a note to file in retaliation for his complaints of sexual harassment. Specifically, Plaintiff avers that other employees have engaged in similar conduct without discipline. Bottling Group asserts that the coaching was appropriate because Plaintiff disclosed confidential employee information. Regardless of Bottling Group's stated justification, or Plaintiff's objection to it, Plaintiff has not shown that the coaching has had any impact on his employment or job performance. (*See* Doc. 44-2 at 175:21–22 (no pay reduction), 175:23–25 (not barred from seeking a promotion), 176:1–3 (no impact on job responsibilities), 176:4–5 (did not lose position)). Because Plaintiff has failed to demonstrate how the coaching negatively affected his employment, Plaintiff cannot establish a prima facie case of retaliation based upon this employment action. *See Hall v. Dekalb Cty. Gov't*, 503 F. App'x 781, 790 (11th Cir. 2013) (holding that a written counseling was not materially adverse where plaintiff "failed to allege that it had any significant impact on his employment").

Plaintiff's Response to Bottling Group's Motion for Summary Judgment presents additional allegations of adverse employment actions not contained in the Complaint. Specifically, Plaintiff claims that Walker's e-mails criticizing his job performance and Losego's text messages concerning matters outside Plaintiff's job responsibilities were sent in retaliation. In each instance, Plaintiff fails to provide any evidence that he suffered an adverse effect from those actions. *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1241 (11th Cir. 2001) (finding that "criticisms of an employee's job performance . . . that do not lead to tangible job consequences will rarely form a permissible predicate for a [retaliation] suit"); *Edwards v. Nat'l Vision, Inc.*, 568 F. App'x. 854, 862 (11th Cir. 2014) (concluding that the assignment of additional work and a formal reprimand were not an adverse employment action because the employee failed to present evidence that she was materially affected). In sum, Plaintiff has failed to demonstrate that he suffered an adverse

employment action as a result of his previous complaints of sexual harassment. Therefore, summary judgment will be granted in Bottling Group's favor on Plaintiff's claim of retaliation.

### IV. FAILURE TO SERVE

In addition to moving for summary judgment on the claims discussed above, Bottling Group moves to dismiss the battery claim against Turton for Plaintiff's failure to serve him. Turton has never been served with a summons or the Complaint in this case. "If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* "Good cause exists only when some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Lepone-Dempsey v. Caroll Cty. Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007) (quotation omitted). "If the plaintiff cannot show good cause, the district court still has discretion to extend the deadline for serving process if doing so is warranted by other circumstances." *Idumwonyi v. Convergys*, 611 F. App'x 667, 667 (11th Cir. 2015). "Circumstances justifying a court's exercise of discretion to extend the time for service include where 'the applicable statute of limitations would bar the refiled action, or [where] the defendant is evading service or conceals a defect in attempted service.'" *Anderson v. Dunbar Armored, Inc.*, 678 F. Supp. 2d 1280, 1297 (N.D. Ga. 2009) (quoting *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1132–33 (11th Cir. 2005)). "Only after considering whether any such factors exist may the district court exercise its discretion and either dismiss the case without prejudice or direct that service be effected within a specified time." *Lepone-Dempsey*, 476 F.3d at 1282.

The Complaint in this case was filed on June 1, 2016—over two years ago. To date, Plaintiff has only attempted to serve Turton a single time, on June 30, 2016, (*see* Aff. of Non-service, Doc. 49-1, at 1), and has not requested an extension of time to serve Turton. The Court finds that Plaintiff has failed to establish good cause for his inability to serve Turton. Moreover, none of the abovementioned factors justify the Court's exercise of discretion to extend the time for service. Plaintiff has not alleged, let alone demonstrated, that Turton is evading service or concealing a defect in the attempted service or that his battery claim will be barred by the statute of limitations. *See Shivers v. Int'l Bhd. of Elec. Workers Local Union 349*, 262 F. App'x 121, 130 (11th Cir. 2008) ("Under Florida law, the statute of limitations for intentional torts is four years." (citing Fla. Stat. § 95.11(3))). Therefore, the Court declines to extend the time to serve, and Plaintiff's battery claim will be dismissed without prejudice.

### V.   CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Bottling Group, LLC's Motion for Summary Judgment (Doc. 43) is **GRANTED**.
2. The Clerk is directed to enter judgment in favor of Bottling Group and against Plaintiff, providing that Plaintiff shall take nothing on his claims against Bottling Group.
3. Count III of the Complaint (Doc. 2) is **DISMISSED without prejudice**.
4. Bottling Group's Motion in Limine (Doc. 45) is **DENIED as moot**.
5. The Clerk is directed to close this case.
6. The status conference set for June 21, 2018, is **CANCELLED**.

**DONE** and **ORDERED** in Orlando, Florida on June 19, 2018.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record